UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MELVIN JONES, | ) | |
| ALNORAINDUS BURTON, | ) | |
| AUBREE DUNGEY, | ) | |
| JAMES FREEMAN, and | ) | |
| SHERROD TILLIS, on behalf of | ) | |
| themselves and all others similarly | ) | Case No. 11-CV-4143 |
| situated, and in the interest of the general | ) | |
| public, | ) | Judge John W. Darrah |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JON BURGE, former Chicago Police | ) | |
| Department ("CPD") Commander; | ) | |
| JOHN BYRNE, former CPD Sergeant; | ) | |
| KENNETH BOUDREAU, | ) | |
| MICHAEL BOSCO, | ) | |
| MICHAEL CUMMINGS, | ) | |
| ROBERT FLOOD, | ) | |
| TIMOTHY FRENZER, | ) | |
| WILLIAM KELLY, MICHAEL KILL, | ) | |
| DENNIS McGUIRE, and | ) | |
| DANIEL McWEENY, former CPD | ) | |
| Detectives; RICHARD BRZECZEK, | ) | |
| former CPD Superintendent; | ) | |
| RICHARD M. DALEY, former Mayor | ) | |
| and former State's Attorney; | ) | |
| RICHARD A. DEVINE, former State's | ) | |
| Attorney; WILLIAM J. KUNKLE; the | ) | |
| CITY OF CHICAGO; COOK COUNTY, | ) | |
| ILLINOIS; the COOK COUNTY | ) | |
| STATE'S ATTORNEY'S OFFICE; and | ) | |
| JOHN DOE DEFENDANTS #1-50, | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiffs Melvin Jones, Alnoraindus Burton, Aubree Dungey, James Freeman, and

Sherrod Tillis filed a Second Amended Class Action Complaint (and Plaintiffs' third amended

complaint) on January 18, 2013, on behalf of themselves and others similarly situated, against Defendants: Jon Burge, John Byrne, Kenneth Boudreau, Michael Bosco, Richard Brzeczek, Michael Cummings, Robert Flood, Timothy Frenzer, Michael Kill, Dennis McGuire, Daniel McSweeny ("CPD Defendants"); former Mayor, Richard M. Daley; former State's Attorney, Richard A. Devine; former Assistant State's Attorney, William J. Kunkle; the City of Chicago; Cook County, Illinois; and the Cook County State's Attorney's Office. Defendants move to dismiss Plaintiffs' Second Amended Class Action Complaint ("SACAC").[1]

## BACKGROUND

The following facts are drawn from the SACAC and are accepted as true for purposes of the Motion to Dismiss. *See Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010). Plaintiffs assert they are among the estimated 135 victims of police torture and that Defendants acted by "torturing or otherwise abusing criminal suspects" and by "condoning the torture program through a knowing refusal to acknowledge, prevent, or punish . . . Defendants' illegal interrogation tactics." (SACAC ¶ 6.) Plaintiffs allege these claims in both their individual capacities and as representatives of a putative class, which includes other victims of the Chicago Police Department's ("CPD") systemic torture of African American male arrestees, witnesses, and suspects. (*Id.* ¶¶ 7-8.)

---

[1] The Complaint was first filed on June 17, 2011, by Melvin Jones alone, and amended by Melvin Jones on August 11, 2011. On June 13, 2012, the First Amended Complaint was dismissed without prejudice. The Second Amended Complaint was filed on November 20, 2012, with leave of the Court, and added additional named Plaintiffs Burton, Dungey, Freeman, and Tillis. With leave of Court, the Second Amended Class Action Complaint was filed on January 18, 2013.

*Defendants*

Defendant Jon Burge was a Chicago Police Lieutenant and the commanding officer of CPD Area 2 – Detective Violent Crime Unit; he was also the Commander of Area 3 detectives until 1991. (*Id.* ¶¶ 21-22.) Burge was removed from his position after the Police Board and the City of Chicago found him guilty of abusing an individual at Area 2 in 1982. (*Id.* ¶ 96(b).) Burge was convicted of perjury and obstruction of justice for denying he had engaged in or was aware of physical abuse or torture of subjects at Area 2 in 2010. (*Id.* ¶ 06(e).)

Defendant Byrne was a sergeant at Area 2 and Area 3 of the CPD and under the command of Burge. (*Id.* ¶¶ 24-25.) Defendants Boudreau, Bosco, Cummings, Flood, Kelly, Kill, McGuire, and McSweeny were Chicago Police Officers under Burge's command. (*Id.* ¶ 27.) These Defendant Officers are sued in their individual and official capacities. (*Id.* ¶ 28.) Defendant Brzeczek was the CPD Superintendent from 1981 to 1983 and is sued in his individual capacity. (*Id.* ¶ 29.)

Defendant Frenzer was an Assistant Cook County State's Attorney, assigned to the Felony Review Unit. (*Id.* ¶ 28.) Defendant Daley was the State's Attorney of Cook County from 1981 to 1989; thereafter, Daley served as the mayor of the City of Chicago from 1989 to 2011. (*Id.* ¶¶ 30-31.) Defendant Devine was Daley's First Assistant State's Attorney from 1981 to 1983. (*Id.* ¶ 33.) From 1988 to 1997, Devine, together with Defendant Kunkle, served as counsel for Area 2 and Area 3 police officers in several civil suits; Devine and Kunkle also acted as Special Assistant Corporation Counsel. (*Id.* ¶¶ 34-35, 40.) Devine was the State's Attorney of Cook County from 1997 to 2008. (*Id.* ¶ 36.) Kunkle also acted as the First Deputy State's Attorney of Cook County and as the First Assistant State's Attorney in the 1980s. (*Id.* ¶¶ 37-38.)

Frenzer, Daley, Devine, and Kunkle are sued in their individual capacities. (*Id.* ¶¶ 28, 32, 36, 41.)

Defendant City of Chicago is an Illinois municipal corporation and is, or was, the employer of Burge and the other Defendant Officers; the City of Chicago is responsible for these Defendants' actions while acting within the scope of their employment. (*Id.* ¶¶ 42-43.) Cook County is an Illinois governmental entity, which consists, in part, of the Cook County State's Attorney's Office. (*Id.* ¶ 44.) Each named Defendant's actions (including Defendant Officers) constitutes a "state action." (*Id.* ¶ 47.)

*Plaintiffs*

Melvin Jones

Plaintiff Melvin Jones is a fifty-nine year old African American male; Jones is a homeless resident of the City of Chicago. (*Id.* ¶ 16.) Jones was arrested by Flood and McGuire on February 5, 1982, when Jones was arrested in the home of his girlfriend while he babysat her child. (*Id.* ¶ 57.) Flood and McGuire searched the home and produced an inoperable gun they said they found in a drawer in the child's room. (*Id.*) Jones was charged with Unlawful Use of a Weapon and taken by Flood and McGuire to the Area 2 police headquarters. (*Id.* ¶ 58.) There, he was placed in an interrogation room and handcuffed to the wall; Flood and McGuire began to question Jones about his purported involvement in the murder of Geoffrey Mayfield. (*Id.* ¶ 60.) Burge entered the interrogation room, announcing that Jones "was going to wish he had never set eyes on him." (*Id.* ¶ 61.) McGuire left the room; Jones was repositioned so that he was handcuffed to the wall with his hands behind his back in a standing position. (*Id.* ¶¶ 62-63.)

Burge pulled Jones's pants down to his ankles and attached a homemade electrocution device ("the shock box") to his body, electrocuting Jones on his left foot, left thigh, and penis,

4

while Jones screamed in protest. (*Id.* ¶¶ 65-66.) Burge asked Flood if he had seen anything; Flood looked at the ceiling and replied he had not seen anything. (*Id.* ¶ 67.) Burge announced, "You see, it's just me and you. No Court and no State are going to take your word against a Lieutenant's word." (*Id.* ¶ 68.) Jones was also gagged with a sock and struck on the head with a stapler. (*Id.* ¶ 69.) Jones was detained for four days while he was interrogated, and he did not receive a *Miranda* warning. (*Id.* ¶ 73.) Jones did not confess to the Unlawful Use of a Weapon or the Mayfield murder during this interrogation. (*Id.* ¶ 74.) The evidence from the interrogation was suppressed on Fifth Amendment grounds and, on September 9, 1982, Jones was found not guilty of Unlawful Use of a Weapon and released from jail. (*Id.* ¶¶ 81, 83.)

Jones was arrested again by Flood and McGuire on December 10, 1982. (*Id.* ¶ 85.) McGuire and Bosco interrogated Jones regarding his involvement in the Mayfield murder on December 11, 1982. (*Id.* ¶ 86.) McGuire falsely testified at a bench trial that Jones confessed to the murder of Geoffrey Mayfield. (*Id.* ¶¶ 88-90.) Jones was convicted of this murder in June, 1983.[2] (*Id.* ¶ 91.)

### Alnoraindus Burton

Plaintiff Alnoraindus Burton is a forty-five year-old African American male currently incarcerated in the Pontiac Correctional Center in Pontiac, Illinois. (*Id.* ¶ 98.) On January 23, 1989, Chicago Police Officers arrested Burton without a warrant and took him to the Area 3 police headquarters. (*Id.* ¶¶ 102-103.) Burton was handcuffed to a wall for hours and questioned about the murder of Anthony Williams. (*Id.* ¶ 104.) When Burton did not provide any

---

[2] In the First Amended Complaint, Jones asserts his conviction was reversed by the Illinois Appellate Court, and that in 1989, he was retried for murder and acquitted. (First Am. Compl. ¶¶ 98-101.) Such information is not alleged in this Second Amended Complaint.

information about the Williams murder, he was beat with a phone book and repeatedly tortured for days. (*Id.* ¶¶ 105-106.)

Defendants Burge, Kill, and Kelly came to interrogate Burton; Kelly hit Burton's hand as it was cuffed to the wall, and Kill choked Burton until he passed out. (*Id.* ¶¶ 107-109.) Shortly thereafter, Kill and Kelly returned to the interrogation room with a written confession, stating that Burton kidnapped and killed another individual, Anthony Watkins. (*Id.* ¶ 110.) Burton was choked until he signed the false confession; at one point, Kill put a gun in Burton's mouth. (*Id.* ¶ 111.) Burton suffered a broken wrist and swollen hands and fingers as a result of his treatment. (*Id.* ¶ 119.)

Defendant Frenzer was brought in as an Assistant State's Attorney to take Burton's confession; Burton informed Frenzer he was beaten by Kill and Kelly. (*Id.* ¶ 113.) Frenzer had Kill and Kelly return to the interrogation room and asked Burton if he wanted to confess in their presence, knowing that would have the effect of coercing Burton into confessing. (*Id.* ¶¶ 114-15.) Burton confessed to killing Watkins as Kill and Kelly instructed. (*Id.* ¶ 116.) The Illinois Torture Inquiry and Relief Commission ("ITIRC") collected an extensive history of allegations of abuse on the part of Kill, including other examples where Kill beat a suspect into confessing. (*Id.* ¶¶ 124-25.)

Watkins, Burton's purported victim, was killed on January 28, 1989. (*Id.* ¶ 117.) Police records indicate Burton was arrested on January 29, 1989, but Burton was in police custody as early as January 23, 1989. (*Id.* ¶ 118.) Burton moved to suppress his confession, but a state court found his statement was made willingly and voluntarily and denied Burton's motion. (*Id.* ¶¶ 120, 122.) A state's witness at Burton's trial testified that he heard Burton confess to the murder, but that witness later recanted that he had any knowledge of Burton's role, asserting that

he made previous statements under threats from police officers. (*Id.* ¶¶ 130-31.) Burton was convicted of first-degree murder on July 31, 1991. (*Id.* ¶ 134.) In a 1995 supplemental petition for post-conviction relief, Burton alleged ineffective assistance of counsel, due in part to counsel's failure to inform the jury Burton was beaten by the police. (*Id.* ¶ 136.)

### Aubree Dungey

Plaintiff Aubree Dungey is a thirty-eight year-old African-American male currently incarcerated at the Pontiac Correctional Center in Pontiac, Illinois. (*Id.* ¶ 139.) Dungey was convicted of the murder of Demone Mims in September 2000. (*Id.* ¶ 140.)

On June 1, 1999, Dungey was refueling his car at a local gas station when an unmarked police car pulled up, and two police officers took Dungey into police custody. (*Id.* ¶¶ 142-43.) The officers beat Dungey at the gas station, hitting the side of his body with a gun and punching him; thereafter, they took Dungey to the Area 2 office. (*Id.* ¶¶ 144-45.) Dungey was placed in handcuffs in an interrogation room at Area 2 for three and a half days. (*Id.* ¶¶ 146.) Dungey suffered internal bleeding from the abuse he sustained at the gas station. (*Id.* ¶ 148.) Dungey was offered food only once while in the interrogation room and was never allowed to use the restroom. (*Id.* ¶ 149.) Dungey signed what he thought was a complaint against another individual; instead, Dungey had signed a confession about his participation in the Mims murder. (*Id.* ¶ 152.) This false confession was introduced at trial, and Dungey was convicted by a jury. (*Id.* ¶¶ 155-57.) Dungey's successive petition for post-conviction relief was denied on September 16, 2012; Dungey still maintains he was tortured by police officers. (*Id.* ¶¶ 162-63.)

### James Freeman

Plaintiff James Freeman is a thirty-four year-old African American male, currently incarcerated in the Pontiac Correctional Center in Pontiac, Illinois. (*Id.* ¶ 164.) Freeman was

7

convicted of murdering Robert Green in 2009. (*Id.* ¶ 165.) Freeman was taken into custody by Chicago Police Officers on January 13, 2004, and interrogated for three days at the Area 2 office. (*Id.* ¶ 166.) During those three days, Freeman was handcuffed to a wall and deprived of food and sleep. (*Id.* ¶ 167.) Freeman was questioned, without an attorney present as he requested, by the Chicago Police Department, the FBI, the DEA, the ATF, the IRS, and the Indiana State Police. (*Id.* ¶ 168.) One of the Chicago Police Officers who questioned Freeman was Defendant Kenneth Boudreau. (*Id.* ¶ 169.) The law enforcement individuals who questioned Freeman made threats to him about his family. (*Id.* ¶¶ 172-74.) Freeman eventually agreed to say whatever the police wanted him to say; then, he was fed and taped a video confession. (*Id.* ¶ 175-76.) In 2005, Freeman moved to suppress this confession, arguing that he was coerced, tortured, and left without counsel despite his repeated requests for an attorney. (*Id.* ¶ 179.) The video confession was deemed admissible and admitted at Freeman's trial. (*Id.* ¶ 182, 187.) On September 21, 2012, Freeman filed a *pro se* petition for post-conviction relief, which has not yet been ruled upon. (*Id.* ¶ 192.)

Sherrod Tillis

Plaintiff Sherrod Tillis is a thirty-four year-old African American male, currently incarcerated in the Pontiac Correctional Center in Pontiac, Illinois. (*Id.* ¶ 194.) In 2005, Tillis was convicted of murdering Brenda Worship on April 4, 2002. (*Id.* ¶ 195.) Tillis was taken into police custody on April 22, 2002 and given a polygraph test. (*Id.* ¶ 196.) After the polygraph test, Tillis was taken to the Area 2 office and was told police were waiting on the results of the polygraph. (*Id.* ¶ 197.) Tillis was informed he failed the polygraph test and would not be permitted to leave the police station; he was handcuffed to a ring on a wall in a small interrogation room. (*Id.* ¶ 200.) Police officers screamed obscenities at him, and beat him

multiple times between April 22 and April 24 of 2002. (*Id.* ¶¶ 201-205.) Tillis was told that the police knew he did not shoot Worship but threatened to charge him with her murder if he did not cooperate; thereafter, Tillis filmed a videotape confession of his involvement in the crime. (*Id.* ¶¶ 207, 209.) At the state court level, Tillis's motions to suppress his arrest and his confession were denied; Tillis was found guilty of Worship's murder in 2004. (*Id.* ¶¶ 217-21.) The Chicago Police Department's Office of Professional Standards found that Tillis's allegations of torture and a coerced confession were unfounded; his petition for post-conviction relief was also denied. (*Id.* ¶¶ 223-24.)

Plaintiffs allege that the torture of African American male arrestees, witnesses, and suspects was part of an ongoing practice and conspiracy on the part of the individual Defendants. (*Id.* ¶ 226-267.)

In the SACAC, Plaintiffs specifically claim:

   I. Violations of Race-Based Equal Protection under 42 U.S.C. § 1983;
  II. Conspiracy to Deprive Constitutional Rights under 42 U.S.C. §§ 1985, 1986;
 III. Negligence in Preventing a Conspiracy to Deprive Constitutional Rights under 42 U.S.C. § 1986;
  IV. Failure to Intervene under 42 U.S.C. § 1983 on behalf of Plaintiff Jones;
   V. (A)-(B) Coercive Interrogation, in violation of 42 U.S.C. § 1983;
  VI. Deprivation of Due Process, in violation of 42 U.S.C. § 1983;
 VII. *Monell*[3] Policy Claim against the City of Chicago, in violation of 42 U.S.C. § 1986;
VIII. *Monell* Policy Claim against the Cook County and Cook County State's Attorney's Office;
  IX. State Law Claim of Civil Conspiracy;
   X. State Law Claim of Violations of the Constitution of the State of Illinois;
  XI. Violation of the Illinois Hate Crime Act, 720 ILCS 5/12-7.1;
 XII. State Law Claim of Intentional Infliction of Emotional Distress;
XIII. State Law Claim of Malicious Prosecution;

---

[3] The Supreme Court decision in *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978), created as a right of action the ability to sue a municipality under Section 1983 for constitutional violations arising from policy, custom, or practice.

9

XIV. State Law *Respondeat Superior* Claim;
XV. State Law Claim of Indemnification; and
XVI. Claims under the Illinois Local Governmental and Governmental Employees Tort Immunity Act, 745 ILCS 10/9-102 and Common Law Claims against the City of Chicago, Cook County, and the State's Attorney's Office.

(*Id.* ¶¶ 324-416.)

Defendants move to dismiss the SACAC on the grounds that the claims are time-barred or otherwise insufficiently pled. Defendants' statute-of-limitations theory requires the dismissal of Plaintiffs' claims; these other grounds, therefore, need not be considered.

## LEGAL STANDARD

To properly assert a claim in a complaint, the plaintiff must present "a short and plain statement of the claim showing that the pleader is entitled to relief and a demand for the relief sought." Fed. R. Civ. P. 8. A defendant may file a motion to dismiss a claim under Federal Rule 12(b)(6) for failure to state a claim upon which relief may be granted. Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). While a court is to accept all allegations contained in a complaint as true, this principle does not extend to legal conclusions. *Iqbal*, 129 S. Ct. at 1949. In order to defeat a motion to dismiss under Rule 12(b)(6), a plaintiff must plead sufficient factual matter to state a claim for relief that is "plausible on its face." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 570). A claim has the requisite facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.

A complaint can also fail to state a claim under Rule 12(b)(6) "[i]f the allegations of the complaint 'show that relief is barred by the applicable statute of limitations.'" *Limestone Dev.*

*Corp. v. Village of Lemont, Ill.*, 520 F.3d 797, 802 (7th Cir. 2008) (*Limestone*) (quoting *Jones v. Bock*, 549 U.S. 199, 215 (2007)). A statute of limitations defense "may be raised in a motion to dismiss if 'the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense.'" *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009) (quoting *States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005)). While a complaint is not required to anticipate affirmative defenses and address them, "dismissal is appropriate when the plaintiff pleads himself out of court by alleging facts sufficient to establish the complaint's tardiness." *Cancer Foundation, Inc. v. Cerberus Capital Management, LP*, 559 F.3d 671, 674-75 (7th Cir. 2009) (quoting *Hollander v. Brown*, 457 F.3d 688, 690 (7th Cir. 2006)).

## ANALYSIS

*Section 1983 Claims*

As mentioned above, Jones's claims were previously dismissed in a Memorandum Opinion and Order issued on June 13, 2012, on the basis that his claims were barred by the applicable statutes of limitations.[4] The facts alleged by Jones in the SACAC are essentially the same facts previously alleged by him. Jones was first arrested in 1982, tortured during an interrogation, and acquitted of the charge of unlawful use of a weapon in September 1982. He was arrested again later that same year and convicted of murder in 1983, though he never confessed to the murder. Jones had alleged in previous complaints that he was retried and acquitted of the murder in 1989; he makes no such assertion here.

---

[4] Defendants also present several other bases upon which they contend Plaintiffs' claims must be dismissed, including that the claims are barred by the Eleventh Amendment, that some Defendants are entitled to absolute or qualified immunity, that some claims are barred by *res judicata*, and that some state law claims are also time-barred. However, based on the foregoing analysis and ruling, it is unnecessary to consider these additional bases.

Counts I, IV, V, and VI of the SACAC allege violations of Section 1983, namely: (I) violation of race-based equal protection, (IV) failure to intervene,[5] (V) coercive interrogation, and (VI) deprivation of due process. The statute of limitations "period applicable to *all* § 1983 claims brought in Illinois is two years, as provided in 735 ILCS 5/13-202 . . . ." *Woods v. Ill. Dept. of Children and Family Services*, 710 F.3d 762, 768 (7th Cir. 2013) (emphasis in original). A Section 1983 claim accrues "when the plaintiff knows or should know that his or her constitutional rights have been violated." *Draper v. Martin*, 664 F.3d 1110, 1113 (7th Cir. 2011) (citations and quotations omitted). To determine the accrual date of the claim: "(1) we identify the injury and (2) we determine when the plaintiff could have sued for that injury." *Draper*, 664 F.3d at 1113 (citing *Hileman v. Maze*, 367 F.3d 694, 696 (7th Cir. 2004)). Accordingly, the date Jones's Section 1983 claims accrued is the date he was abused, February 5, 1982, or, at the very latest, after his murder conviction was overturned, in 1989 (which Jones failed to mention in the SACAC). Jones knew or should have known his rights were being violated at the time he alleges he was tortured, in 1982. Therefore, he should have asserted his Section 1983 claims in 1984, at the latest.

This same rule applies to the other newly added Plaintiffs' Section 1983 claims. Burton asserts he was tortured by the Chicago Police Officers in 1989. Dungey suffered abuse at the hands of Chicago Police Officers in June of 1999; Freeman was tortured by the police officers and coerced into a confession in 2004. Tillis was tortured by Chicago Police Officers in 2002. These Plaintiffs knew or should have known at the time they were abused that their

---

[5] The failure to intervene claim is alleged only on behalf of Jones, and only against Defendants Bosco, Brzeczek, Burge, Daley, Devine, Flood, McGuire, and McSweeny. (*See* SACAC ¶¶ 350-354, Relief Sought.)

constitutional rights were violated. Along with Jones, these new Plaintiffs failed to assert their claims under Section 1983 until well after the two-year statute of limitations lapsed, in some cases waiting over twenty years. "It does not help to invoke the doctrine of equitable tolling. A litigant is entitled to equitable tolling if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Lee v. Cook County*, 635 F.3d 969, 972 (7th Cir. 2011). Plaintiffs here have done neither. As this Court previously provided:

> Legally, it *was* possible for Plaintiff to pursue his claims under Section 1983 at the time they accrued. The suggestion that the statute of limitations should be disregarded because the "political climate" was not ideal for Plaintiff to pursue his claims has no basis in the law and is particularly unavailing, considering that other plaintiffs in cases cited by Plaintiff here *did* bring timely claims against Burge and others at an earlier date.

(June 12, 2012 Mem. Op. and Order at 12.) Therefore, the Plaintiffs' claims under Section 1983 are dismissed as time-barred, and equitable tolling does not apply to these claims.

Moreover, besides Jones's claims, the other Plaintiffs' claims are barred by the United States Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck*, the Supreme Court held that "when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Heck*, 512 U.S. at 487. Applying this rationale, the Section 1983 claims asserted by Burton, Dungey, Freeman, and Tillis fail on this basis, as well, as these Plaintiffs remain incarcerated and have not demonstrated that their convictions have been invalidated.

*Section 1985 and 1986 Claims*

In Count II of the SACAC, Plaintiffs allege Defendants conspired to deprive Plaintiffs of their constitutional rights, including their rights to be free from unreasonable search and seizure, to be free from wrongful conviction and imprisonment, and to due process of the law, in violation of 42 U.S.C. § 1985. Count II further alleges the individual Defendants failed to prevent the conspiracy, in violation of 42 U.S.C. § 1986. Count III of the SACAC asserts a claim for negligence in preventing a conspiracy to deprive Plaintiffs of their constitutional rights, in violation of 42 U.S.C. § 1986.

The two-year statute of limitations applicable to Section 1983 claims in Illinois also applies to Section 1985 claims. *Horton v. Marovich*, 925 F.Supp. 540, 544 (N.D.Ill. 1996) (citations omitted). A Section 1986 claim is subject to a one-year statute of limitations. *See* 42 U.S.C. § 1986 (providing, "[N]o action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued."). Defendants assert these claims are time-barred, and that further, since the underlying Section 1983 claims are untimely, the derivative conspiracy claims are also time-barred. (Defs.' Mem. in Supp. of Mot. at 13.)

Plaintiffs contend these claims are not time-barred. It appears that in the seventy-page SACAC, Plaintiffs seek to allege a conspiracy by identifying multiple, discrete examples of abuses by Chicago Police Officers. Plaintiffs assert that a conspiracy has been ongoing at least since the time Jones was abused, in 1982, through January 2011, and that these continuing violations occurred within the limitations period. Alternatively, Plaintiffs contend the statute of

limitations should be equitably tolled or that Defendants should be equitably estopped from raising a statute of limitations defense.[6]

"A civil conspiracy claim may also serve as a source of § 1983 liability provided the plaintiff can show that 'he was deprived of a right secured by the Constitution or laws of the United States and that the deprivation was caused by a person acting under color of state law.'" *Hobbs v. Cappelluti*, 898 F. Supp. 2d 738, 753 (N.D. Ill. 2012) (quoting *Kelley v. Myler*, 149 F.3d 641, 648 (7th Cir. 1998)). Accordingly, "[t]he conspiracy itself is not an independent basis of § 1983 liability; there must be an underlying constitutional injury or the attendant conspiracy claim necessarily fails." *Hobbs*, 899 F. Supp. 2d at 753.

As addressed above, Plaintiffs are unable to assert underlying constitutional violations pursuant to Section 1983. Plaintiffs' claims for conspiracy must necessarily fail; because the underlying Section 1983 claims are barred, the derivative conspiracy claims are also barred. Similar to the Section 1983 claims, the statutes of limitations governing Plaintiffs' claims under Sections 1985 and 1986 cannot be equitably tolled, as Plaintiffs cannot demonstrate they have been diligently pursuing their rights. *See Lee v. Cook County*, 635 F.3d at 972.

Moreover, Plaintiffs cannot demonstrate that Defendants committed continuous, ongoing violations of their constitutional rights such to establish a conspiracy. In an attempt to stay within the statute of limitations, Plaintiffs go so far as to allege that a letter written in January

---

[6] Plaintiffs further assert that the statute of limitations defense should not be available here, where "many elements of the conspiracy can only be obtained through discovery." (Resp. at 8.) However, this argument is unavailing; the claims are time-barred, and "a defendant should not be forced to undergo costly discovery unless the complaint contains enough . . . to indicate that the plaintiff has a substantial case." *Limestone Development Corp.*, 520 F.3d at 802-803. Due to the untimeliness of the claims alleged, Plaintiffs have not submitted a substantial case that necessitates Defendants to undergo discovery to support Plaintiffs' claims of conspiracy.

2011 by Defendant Kunkle to Burge's sentencing judge prior to his sentencing represents the "last overt act of the conspiracy alleged." (Resp. at 12.) As noted in the previous opinion dismissing the Complaint, "[s]imply listing numerous, unrelated examples of Defendants' purported violations of the putative class members' constitutional rights does not plausibly plead a *continuous* violation." (June 13, 2012 Mem. Op. and Order at 15.) "[T]he continuing violation rule does not apply to a series of discrete acts, each of which is independently actionable, even if those acts form an overall pattern of wrongdoing." *Rodrigue v. Olin Employees Credit Union*, 406 F.3d 434, 443 (7th Cir. 2005). Therefore, the conspiracy claims are not saved by Plaintiffs' argument that they have pled a continuous violation.

Finally, Plaintiffs' claims of conspiracy cannot be saved by the doctrine of equitable estoppel. "Equitable estoppel operates to suspend the running of the statute of limitations where the defendant has actively mislead the plaintiff or somehow prevents the plaintiff from suing within the limitations period." *Reyes v. City of Chicago*, 585 F. Supp. 2d. 1010, 1015 (N.D. Ill. 2008). Plaintiffs do not sufficiently allege Defendants actively sought to prevent Plaintiffs from filing lawsuits. "[E]quitable estoppel is only available when the defendant has used misrepresentations or concealment – rather than threats of reprisal – to prevent the plaintiff from suing." *Id.* at 1016 (citations omitted). Plaintiffs contend that Defendants continued to conceal their conspiracy into the year 2011, though Plaintiffs could have certainly known of and asserted their claims well in advance of Burge being convicted and sentenced, as many plaintiffs in other cases had. Hence, Counts II and III of the SACAC are dismissed.

### *Monell* Claims

Counts VII and VIII of the SACAC allege *Monell* policy claims against the City of Chicago, Cook County, and the Cook County State's Attorney's Office. The same two-year

statute of limitations that applies to a Section 1983 claim applies to a *Monell* claim, with the statute of limitations beginning to run when a plaintiff knew or should have known his constitutional rights were being violated. Like the Section 1983 claims, these claims are barred by the statute of limitations; and, as discussed above, neither equitable tolling, the continuous violation doctrine, nor the doctrine of equitable estoppel can save these claims. Where no underlying constitutional violation is actionable, a municipality cannot be liable under *Monell*. *Sallenger v. City of Springfield*, 630 F.3d 499, 505 (7th Cir. 2010). Counts VII and VIII of the SACAC are dismissed.

*State-Law Claims*

The remaining claims in the SACAC are state-law claims. "[T]he general rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits." *Kennedy v. Schoenberg, Fisher & Newman, Ltd.,* 140 F.3d 716, 727 (7th Cir. 1998) (citations and quotations omitted). Accordingly, as all of the claims arising under federal law in the SACAC are dismissed, the Court exercises its discretion to decline supplemental jurisdiction over the remaining state-law claims. 28 U.S.C. § 1367(c)(3); *Al's Service Center v. BP Products North America, Inc.*, 599 F.3d 720, 727 (7th Cir. 2010) ("When all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claim.").

**CONCLUSION**

For the reasons set forth above, Counts I through VIII are dismissed with prejudice. As the only counts giving rise to federal jurisdiction are dismissed, the Court relinquishes jurisdiction over Plaintiffs' state-law claims. *See Al's Service Center*, 599 F.3d at 727. Counts

17

IX through XVI are dismissed without prejudice to re-file these claims in state court. Therefore, Plaintiffs' SACAC is dismissed, and this case is hereby terminated.

Date: September 17, 2013                           _____
                                                   JOHN W. DARRAH
                                                   United States District Court Judge